UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KURT HAMMOND,

        Plaintiff,

v.                                                              Case No. 17-13051

COUNTY OF OAKLAND, et al.,

        Defendants.
_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION IN LIMINE AND DENYING PLAINTIFF'S MOTION IN LIMINE

Plaintiff Kurt Hammond has filed a motion in limine that seeks to exclude evidence regarding Plaintiff's criminal convictions. (ECF No. 85). Likewise, Defendants Christopher Cadotte and Oakland County have filed a "Motion in Limine to Preclude Evidence of Defendant [Cadotte]'s Subsequent Acts." (ECF No. 80). The motions have been fully briefed, and the court concludes a hearing is unnecessary.[1] *See* E.D. Mich. R. 7.1(f)(2). For the reasons explained below, the court finds that Defendants' motion in limine should be granted while Plaintiff's should be denied.

### I. BACKGROUND

In December 2016, Plaintiff was bitten by a police dog named Odin as Oakland County Sherriff's deputies arrested Plaintiff in his home. Following the incident, Plaintiff filed the present 42 U.S.C. § 1983 action alleging arresting deputies used excessive force in violation of the Fourth Amendment. (ECF No. 1.) Plaintiff also brings a *Monell* claim against Oakland County, asserting that Defendant County failed to have an

---

[1]     Plaintiff did not file a reply brief supporting his motion in limine.

effective dog use policy and failed to train Odin. Plaintiff's Complaint alleges he experienced significant damages "[a]s a direct and proximate result of the wrongful conduct and Constitutional violations by the Defendants." (*Id.*, PageID.18.) Specifically, he alleges physical injuries, "humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries."[2] (*Id.*, PageID.19.)

This court, in an opinion by Judge Cohn, initially denied summary judgment as to all Defendants. *See Hammond v. Cty. of Oakland*, No. 17-13051, 2019 WL 5578029 (E.D. Mich. Oct. 29, 2019), *aff'd in part, rev'd in part*. Defendant deputies appealed on qualified immunity grounds, and the Sixth Circuit affirmed in part, and reversed in part, this court's denial of qualified immunity. *See Hammond v. Cty. of Oakland, Michigan*, 825 F. App'x 344 (6th Cir. 2020).

The Sixth Circuit held that a genuine factual dispute remains as to whether Defendant Cadotte, Odin's handler, "ordered Odin to bite [Plaintiff] after the deputies had handcuffed him," or if, instead, "Odin's bites came as a result of a 'spontaneous response' to Hammond's 'threatening' movement into the dog's defensive perimeter.'" *See id.* at 347. The ruling significantly narrowed the issues in dispute by finding that Defendant deputies "did not use excessive force when they deployed Odin into the house to locate [Plaintiff], tackled him to the ground, and pinned him there while handcuffing him." *See id.* Further, the Sixth Circuit held that other Defendant deputies present at the scene were entitled to qualified immunity regarding the entire incident because Plaintiff "cites no caselaw clearly establishing that officers who are not trained

---

[2] The court previously explained the factual underpinnings and procedural history of this case at length so it will not do so again here. (See ECF No. 78.)

2

as dog handlers have a duty to intervene and control a dog notwithstanding the presence of the dog's handler[, Defendant Cadotte]." *Id.* Consequently, only Cadotte and the County remain as Defendants in this action.

In anticipation of trial, the opposing parties have filed competing motions in limine that, in the main, seek to preemptively limit evidence and questioning that can be offered to impeach the testimony of their respective clients.

## II. PLAINTIFF'S MOTION TO LIMINE

Plaintiff has filed a motion in limine seeking to bar Defendants from introducing "any questions, comments, innuendo, or evidence regarding" either his prior 1986 felony criminal sexual conduct convictions (Mich. Comp. Laws Ann. §§ 750.520b - 750.520c), or his 2016 criminal sexual conduct (M.C.L § 750.520d) and unlawful imprisonment (M.C.L § 750.349b) convictions resulting from his conduct the night he was arrested by Defendant Cadotte. (ECF No. 85, PageID.2084.) Plaintiff argues that the 1986 convictions are "irrelevant to the issues in the present case" and should be excluded as "more prejudicial than probative" under Federal Rule of Evidence 609(b)(2) as the conviction is more than ten years old. (*Id.*, PageID.2085.) Likewise, while Plaintiff concedes that under Rule 609(a)(1), "the jury can be informed that [he] is serving a prison term for a felony conviction and the date of [the 2016] conviction," he argues details regarding "the *nature* of [the] conviction . . . is not probative of [Plaintiff's] credibility and creates a significant danger of unfair prejudice." (*Id.*)

Rule 609(a)(1)(A) provides, in relevant part, "for a crime that, in the convicting jurisdiction, was punishable by death or imprisonment for more than one year, the evidence . . . *must* be admitted, subject to Rule 403, in a civil case." Fed. R. Evid.

3

609(a)(1)(A) (emphasis added). "[I]f more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," such a conviction is generally inadmissible unless "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." See Fed. R. Evid. 609(b).

The court holds that Plaintiff's motion in limine must be denied. First, the court finds that Defendant is allowed to introduce relevant evidence regarding Plaintiff's criminal conduct in 2016 because such information is both relevant to Plaintiff's credibility and needed to provide the jury with a complete picture of the events that led to his arrest by Defendant Cadotte. Second, *limited* information regarding the 1986 convictions can be presented to the jury for impeachment purposes under Rule 609.

### A.  Plaintiff's 2016 Felony Convictions

Defendants argue that evidence regarding Plaintiff's 2016 felony convictions can be admitted for the purpose of impeaching Plaintiff's credibility under Fed. R. Evid. 609(a) and because "the severity of the crime at issue (specifically rape) is one factor used to evaluate the actions of [Defendant] Cadotte" under the test for assessing excessive force laid out by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 394 (1989). (*See* ECF No. 87, PageID.2363-65.) The court agrees.

Here, Plaintiff's credibility will undoubtedly be a central issue at trial because the jury will be required to weigh Plaintiff's claim that Defendant Cadotte ordered Odin to bite him once handcuffed, so the fact that Plaintiff has amassed serious felony convictions is relevant. *See Hammond*, 825 F. App'x at 347. "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify

4

truthfully," *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005), and reflects the "proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath," *Cummings v. Malone*, 995 F.2d 817, 826 (8th Cir. 1993). Plaintiff's 2016 felony convictions are less than ten years old, so Rule 609(a)(1) mandates that the court admit evidence of Plaintiff's 2016 convictions unless the probative value of this evidence "is substantially outweighed by a danger of . . . unfair prejudice." *See* Fed. R. Evid. 403.

Again, Plaintiff concedes that "the jury can be informed that [he] is serving a prison term for a felony conviction and the date of [the 2016] conviction," but he argues that the jury should not be informed that one of the crimes at issue is criminal sexual conduct. (*See* ECF No. 85, PageID.2085.) The Wright & Miller treatise indicates that, "[m]ost courts and commentators favor limiting admissibility to so-called 'essential facts' of the conviction," which generally "include the number of convictions, *the nature of each underlying crime*, the time and place of each conviction, and the punishment." 28 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Evid*. § 6134 (2d ed.) (emphasis added). However, the treatise also notes that a number of precedents grant the district court discretion, under "Rule 403 balancing," to determine the admissibility of "each detail about the crime." *Id.* The Sixth Circuit has previously indicated that it is "inclined to believe" that Rule 609(a) usually "require[s] admission . . . [of] the nature of the crime, the number of counts, and the date of the disposition." *Doe v. Sullivan Cnty., Tenn.*, 956 F.2d 545, 551 (6th Cir. 1992); *see also Meirs v. Ottawa Cnty.,* 821 F. App'x 445, 464 (6th Cir. 2020) (rejecting the proposition "that the precise nature of [the witness's past] crime should have been excluded" under Rule 609(a)(1) and finding that

5

the district court acted within its discretion when it "correctly held that the nature of the crime [criminal sexual conduct] was admissible").

While the court acknowledges that some prejudice could result from the nature of Plaintiff's 2016 criminal sexual conduct conviction, the admission of the 2016 convictions does not present an especially close call under Rule 403. Rather, the nature of Plaintiff's conduct immediately before his arrest that led to felony convictions is relevant not only for impeaching Plaintiff's credibility but also "to provide the jury with a full account of the events surrounding [Plaintiff's excessive force] claims against" Defendants. *See Greene v. Distelhorst*, 116 F.3d 1480, *3-*4 (6th Cir. 1997) (Table) (citing *Graham*, 490 U.S. at 388) ("Whether an arrest involved the excessive use of force is determined by applying the standard of objective reasonableness to the specific conduct of the arresting officers in the context of the facts and circumstances actually present in the particular case."). In *Greene,* the Sixth Circuit found that while evidence of a drug abuse conviction stemming from a defendant's arrest did "not fit neatly into a Rule 404(b) analysis," it was nevertheless proper to admit the conviction since the "criminal activity was part and parcel of the arrest of which [the plaintiff] now complains." *Id.* at *3. Similarly, this court found that a civil plaintiff's *nolo contendere* home invasion convictions "should be admitted to provide the jury with a *full account* of the events giving rise to [the plaintiff]'s excessive force claim and to demonstrate [the plaintiff]'s motive to run, hide, and resist arrest, as well as assessing the reasonableness of [the Officer's] use of force." *Webb v. Hiben*, No. 12-12370, 2015 WL 5335011, at *4 (E.D. Mich. Sept. 14, 2015) (citing *Greene*, 116 F.3d at 1480) (Cox, J.) (emphasis added).

In the present case, it is undisputed that officers encountered Plaintiff at his residence when a female 911 caller reported that Plaintiff had just raped her and was in the home. (*See* ECF No. 63, PageID.1852.) In addition to impeaching Plaintiff's credibility, the fact that Plaintiff was later convicted of criminal sexual conduct helps provide the full story and puts his excessive force allegations against Defendant Cadotte in the proper context for the jury. *See id.* So, the court concludes that the probative value of this evidence, including the fact that Plaintiff committed sexual assault, is not outweighed by the danger of unfair prejudice under Rule 403 balancing. Consequently, the court finds that Defendants should be allowed to tell the jury the specific convictions that resulted from Defendants' conduct and an overview of the facts that supported each 2016 conviction. However, given the limited nature of the remaining factual dispute in this litigation, the court expects that Plaintiff will not spend an inordinate amount of court time probing Plaintiff's past. Further, the court can provide a limiting instruction at Plaintiff's request.

### B.  Plaintiff's 1986 Felony Convictions

Plaintiff next argues that Defendants should be precluded from making any mention of his 1986 criminal sexual conduct convictions under Rule 609(b) because they occurred well over ten years ago, and given the nature of sex crimes, "[t]here is virtually no chance that a limiting instruction will be able to migrate the unfair prejudice." (ECF No. 85, PageID.2097.) Plaintiff cites, *Reed-Bey v. Pramstaller*, where this court found that the defendants' request to admit a twenty-seven-year-old sexual assault conviction in a § 1983 civil action solely for the purpose of impeaching his credibility could not pass Rule 609(b) as the defendants had not shown that the "probative value

7

of this evidence substantially outweighs its prejudicial effect." (*See Id.* (citing No. 06-10934, 2013 WL 5954424, at *2 (E.D. Mich. Nov. 7, 2013) (Roberts, J.).) *See also United States v. Sims*, 588 F.2d 1145, 1148 (6th Cir. 1978) ("When stale convictions are offered for the purpose of impeaching a witness, they often shed little light on the present tendency of the witness toward truthfulness and veracity.").

But as Defendants correctly point out, Michigan Department of Corrections records indicate that Plaintiff was not discharged from the state's custody until October 17, 2012, less than ten years ago. (*See* ECF No. 87-4, PageID.2413.) So, even though the crimes occurred over thirty years ago, Plaintiff's 1986 convictions are properly analyzed under the test contained in Rule 609(a) and not the stricter standard contained in Rule 609(b). *See* Fed. R. Evid. 609(b) (indicating that the admissibility test contained in 609(b) only "applies if more than 10 years have passed since the witness's conviction *or release from confinement for it, whichever is later*") (emphasis added). Further, Defendants argue that Plaintiff's prior conviction and prison term have additional probative value in the present case because "Plaintiff has asserted mental anguish, emotional suffering, and 'other psychological and emotional injuries' . . . including an alleged fear of the police." (ECF No. 87, PageID.2360 (quoting ECF No. 1).) Defendants reason that a jury cannot consider such damages without knowing about Plaintiff's past mental health issues and his "20+ year incarceration when he interacted with law enforcement in a custodial setting on a daily basis." (*Id*., PageID.2361.)

Here, the court finds that the additional prejudice caused by introducing some general information about Plaintiff's 1986 convictions and the length of his incarceration does not substantially outweigh its probative value. However, given that the convictions

are close to becoming stale—*almost* ten years have elapsed since Plaintiff's release—the court will exercise its discretionary authority to further limit the amount of information that can be introduced regarding the 1986 convictions. Again, as the Wright and Miller treatise indicates, the court retains some discretion to weigh the admissibility of individual details of a crime when conducting Rule 403 balancing. Wright & Miller, § 6134; *see also Old Chief v. United States*, 519 U.S. 172, 184-85 (1997) (noting in the context of a criminal case that "Rule 403 confers discretion by providing that evidence 'may' be excluded, the discretionary judgment may be informed . . . by placing the result of that assessment alongside similar assessments of evidentiary alternatives."). Specifically, the court finds that the prejudicial effects of the 1986 convictions can be substantially reduced by curtailing what information can be introduced about these nearly stale convictions. For instance, the court sees little additional probative value in the fact that the 1986 criminal sexual conduct convictions involved a minor, so the court finds this detail should not be admitted. And it seems to the court, per *Old-Chief*, that Defendants' interests could best be satisfied if the parties collaborate on limited language that can be used to generally inform the jury of the 1986 convictions and the lengthy nature of Plaintiff's prison term. The court envisions a description communicating mainly that Plaintiff was previously convicted of two serious felonies in 1986 that resulted in his imprisonment until 2012. Given the court's ruling, the parties are directed to further collaborate on the most appropriate language.

### C. Plaintiff Cannot Raise a Summary Judgment Argument in a Motion in Limine

Finally, Plaintiff's motion in limine contains an additional section that the court finds is essentially an untimely argument for summary judgment. Despite, the Sixth

Circuit's ruling to the contrary, Plaintiff now argues that "all of [Defendant Cadotte's] actions and use of force, and that of his dog, were excessive" because Defendant Cadotte entered Plaintiff's house without first obtaining a warrant. (ECF No. 85, PageID.2104.) Plaintiff contends that the Supreme Court's recent decision in *Caniglia v. Strom*, 141 S. Ct. 1596 (2021) essentially abrogates the Sixth Circuit's 2020 ruling in the present case. Plaintiff concedes he is not asserting an illegal search claim but instead states that "any of Defendant Cadotte's and his dog's use of force were also illegal from the moment they illegally entered Plaintiff's home without a warrant, and thus all of the force used by Defendant Cadotte and his dog biting Plaintiff from the outset were excessive." (*Id.*) This argument fails for two main reasons.

First, Plaintiff admits that his motion in limine is renewing an argument he previously raised at summary judgment, a practice that the Sixth Circuit has previously held is inappropriate. (*See id.,* PageID.2105 ("Plaintiff previously argued this same proposition when he responded to Defendant's Motion for Summary Judgment in June 2019.").) "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2003). "In other words, a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial—the summary-judgment motion. Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment." *Id.* Thus, when "the motion in

limine is no more than a rephrased summary-judgment motion, the motion should not be considered." *Id.* at 563. Here, if Plaintiff were serious about raising this constitutional argument, he could have sought leave to file a second summary judgment motion in 2021 after the new supreme court decision was released, but he did not, so the court cannot consider Plaintiff's new argument.

But regardless, Plaintiff's argument also fails on the merits. In *Caniglia*, the Court rejected the concept of a "'community caretaking'" exception that would have allowed officers to enter a plaintiff's home without a warrant and remove his firearms for purposes of protecting the public without any indication of criminal activity. *Caniglia*, 141 S. Ct. at 1599. Because the court below had declined to consider the existence of any specific "exigent circumstances," the majority did not directly address the issue. *See id.* In the present case, however, there are numerous exigent circumstances that supported Defendant Cadotte's decision to enter the home, making *Caniglia's* holding inapplicable. *See Baker v. City of Trenton*, 936 F.3d 523, 530 (6th Cir. 2019) (quoting *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996)) ("There are four recognized situations where exigent circumstances allow a warrantless entry: '(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others.'"). The mere fact that Plaintiff "retreated into his own home to tend to his stab wound" after committing sexual assault, as Plaintiff contends, does not mean there were not exigent circumstances supporting the officer's decision to enter the home. (*See* ECF No. 85, PageID.2106.) Plaintiff's motion will therefore be denied.

### III. DEFENDANTS' MOTION IN LIMINE

Defendants' motion in limine seeks a ruling preventing Plaintiff from introducing any evidence of a subsequent incident involving Defendant Cadotte, which occurred on March 9, 2020, where Cadotte shot and injured a female passenger while conducting a traffic stop. (ECF No. 80, PageID.1991.) The incident resulted in Cadotte's termination from the Sheriff's Office for violating the County's weapons/use of force policies, and subsequently, he was criminally charged for careless, reckless, or negligent use of a firearm resulting in death or injury to a person under Mich. Comp. Laws Ann. § 752.861. (ECF No. 80-3, PageID.2043; ECF No. 80-2, PageID.2039.) A violation of M.C.L. § 752.861 is a "misdemeanor" punishable by up to two years imprisonment. Currently, the case is unresolved, and Cadotte has not yet been convicted of any crime. *See People v. Cadotte,* No. 2020-275261-FH (Mich. Cir. Ct. June 10, 2022).

Defendants argue that "[e]vidence related to the March 2020 incident involving Cadotte is not relevant" to the present case, so it is subject to exclusion under Rule 403 as more prejudicial than probative. (ECF No. 80, PageID.1996-97.) Further, Defendants point out that Rule 404(b) has been interpreted as barring the introduction of subsequent acts to show that an officer has a propensity for using excessive force. (*Id.,* PageID.2000.) *See also Simmons v. Napier,* 626 F. App'x 129, 134-35 (6th Cir. 2015) (affirming the exclusion of evidence that a policeman was "overly aggressive with citizens" during other arrests because its relevance was based on "precisely the sort of propensity reasoning Rule 404(b) forbids") (quotation omitted).

Plaintiff's response implicitly concedes that Defendant Cadotte's subsequent act cannot be admitted for the purpose of showing a tendency toward using excessive

12

force, but Plaintiff argues that "Cadotte's [2020] arrest and termination. . . are relevant" to impeaching his credibility. (ECF No. 82, PageID.2051.) Specifically, Plaintiff argues that the bodycam footage from the March 2020 shooting shows Cadotte either "attempted to bend the facts . . . or lie[d]" to a fellow officer at the scene when he remarked that he fired the single shot because he "'tripped'" immediately after drawing his weapon. (*Id.*, PageID.2052.) Plaintiff intimates that because Cadotte's "statement was not supported by any other person nor by video of the incident," such evidence would "go[] directly to the issue of Cadotte's credibility" and show that "he makes up a story to protect himself." [3] (*Id.*, PageID.2052 ("The credibility of the parties is crucial in this case as they assert two differing sets of facts." ).)

Reviewing the records attached by Plaintiff regarding the March 2020 shooting, the court finds that Plaintiff's theory that Cadotte was untruthful regarding the incident is based on conjecture; therefore, Rule 403 bars admission of such evidence regarding the incident.

First, the nature of the misdemeanor charge currently brought against Cadotte does not itself require prosecutors to establish that Cadotte engaged in willful conduct or acted untruthfully. Instead, it requires only a showing that "because of carelessness, recklessness or negligence," he injured someone by discharging a firearm. *See* Mich.

---

[3]  Because Cadotte has only been charged with a crime and not convicted of one Federal Rule of Evidence 609 is inapplicable. *See United States v. Lipscomb,* 702 F.2d 1049, 1054 n.19 (D.C. Cir. 1983) ("In light of Congress' determination in Rule 609 that only prior convictions can be used to impeach a witness' credibility, and of the presumption in our criminal law that a defendant is innocent until proven guilty, the existence of pending charges does not increase the probative value of [the defendant's] prior conviction."). If Cadotte is convicted before he testifies in the present matter, Plaintiff can again raise the issue.

Comp. Laws § 752.861. Even if Cadotte did "trip," he could arguably still be "negligent" in discharging his service weapon, so the fact that the Oakland County Prosecutor is pursuing such a charge does not presuppose that Cadotte's statement was dishonest.

Second, the court finds no indication in Cadotte's termination letter or the investigative report regarding the March 2020 incident that investigators concluded Cadotte did not "trip" when he discharged his firearm or that he was otherwise dishonest. Plaintiff observes that the internal investigative report regarding "makes no mention of Cadotte tripping" in its description of the incident, which largely relied on dashcam footage from Cadotte's patrol car. (*See* ECF No. 82, PageID.2049.) But the fact that the investigative report does not discuss, one way or another, whether Cadotte "tripped" in the seconds before he discharged his firearm (*see* ECF No. 80-1, PageID.2016), cannot reasonably be used to establish that Cadotte was dishonest. For instance, the report could have avoided making a determination on the "tripping" excuse because it was not relevant to the County's conclusion that Cadotte violated department policies and procedures by "careless[ly] discharging a firearm." (*See* ECF No. 80-3, PageID.2043.) Alternatively, it is possible that the video itself may not be detailed enough to offer a definitive answer to the question. Indeed, while the video itself has not been presented to the court, the investigative report states that when Cadotte took "approximately two more steps, [after firing] he lower[ed] his frame below the roofline of the Malibu concealing his entire person from camera view momentarily," an observation suggesting that the angle of the dashcam meant its view of things closer to the ground—such as feet—may have been obstructed. (*See* ECF No. 80-1, PageID.2016.) In short, the court finds the County's investigative report regarding the 2020 incident

14

presents no meaningful evidence that could reasonably be used to impeach Cadotte's honesty.

Third, Cadotte has not given any inconsistent statements regarding the March 2020 incident. Again, according to the investigatory report, Cadotte can be heard in the dashcam video saying he tripped. Likely on the advice of counsel, Cadotte later provided only a brief written statement regarding the incident asserting only that "[t]he discharge of my firearm was unintentional." (ECF No. 80-1, PageID.2032.) The contents of this—limited—later statement does not at all conflict with his remarks at the scene.

In sum, Plaintiff has failed to demonstrate the March 2020 incident is meaningfully probative of Cadotte's credibility, let alone probative enough to outweigh the substantial risk of prejudice that the introduction of such evidence would carry. Further, the court finds that consideration of the March 2020 incident would "risk mini-trials on tangential issues." *See Szeinbach v. Ohio State Univ.*, No. 2:08-CV-822, 2014 WL 2453021, at *5 (S.D. Ohio June 2, 2014). Consequently, the court concludes evidence involving the March 2020 incident must be excluded under Rule 403.[4]

## IV. CONCLUSION

The court finds that Plaintiff's past felony convictions are relevant and admissible under Rule 609 and Rule 404(b). And the court finds Defendant Cadotte's involvement in a subsequent March 2020 shooting is not currently admissible under Rule 404(b) for the purpose of impeaching his charter for truthfulness. Accordingly,

---

[4] Plaintiff also argues in his response brief that Defendant Cadotte may attempt to bolster his credibility when testifying by implying he still works as an Oakland County deputy sheriff. (*See* ECF No. 82, PageID.2052.) This concern is premature, but if the need arises there are ways of establishing that Cadotte is no longer employed in a law enforcement capacity without discussing the 2020 incident.

IT IS ORDERED that Plaintiff's "Motion in Limine" (ECF No. 85) is DENIED.

IT IS ORDERED that Defendants' "Motion in Limine to Preclude Evidence of Cadotte's Subsequent Acts and Termination" (ECF No. 80) is GRANTED.

                                                s/Robert H. Cleland                /
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated:  August 19, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 19, 2022, by electronic and/or ordinary mail.

                                                s/Lisa Wagner                   /
                                                Case Manager and Deputy Clerk
                                                (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\17-13051.HAMMOND.LimineSubsequentActs.AAB.docx